UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD F. MURPHY,

                              Plaintiff,

        -vs-                                    **No. 6:09-CV-6068(MAT)**
                                                **DECISION AND ORDER**

THE CITY OF ROCHESTER, THE CITY OF
ROCHESTER SCHOOL DISTRICT, et al.,

                              Defendants.
_____

## I.    Introduction

Represented by counsel, Donald F. Murphy ("Murphy" or
"Plaintiff") instituted this action against defendants, alleging
numerous injuries arising from his employment as a teacher in the
Rochester City School District ("the RCSD"). Presently before the
Court is the motion by the RCSD and employees of the RCSD ("the
RCSD Defendants") for summary judgment dismissing the amended
complaint.

## II.  Factual Background and Procedural History

### A.    Facts Giving Rise to the Instant Complaint

In 2007, Murphy was employed as a teacher at the RCSD's Edison
Technology High School. During the spring semester of that year, he
oversaw a program in which students built a robot and entered it in
competitions. At the end of the school year, Murphy stored the
robot with its related parts in a locked wooden crate in his
classroom. Prior to the beginning of the 2007-2008 school year,
Murphy learned that he would no longer be involved in the robotics

program, and that Thomas Talone ("Talone") would be taking over this unpaid position.

When school started in the fall of 2007, Talone started searching for robotics equipment remaining from the previous competition season. Ultimately some materials were recovered, but the robot remained missing. This was reported to Officer Fred Van Order ("Officer Van Order") of the Rochester Police Department ("RPD") who commenced an investigation. Supporting depositions were obtained from newly installed principal Linda Kantor (Principal Kantor); Scott Martzloff, the Assistant Principal in charge of Operations during 2006-2007 and 2007-2008 ("Ass't Principal Martzloff"); School Sentry Joseph Jackson ("Sentry Jackson") who reviewed the security video; and Gregory Needel ("Student Needel"), an RIT student volunteer for the 2006-2007 robotics program. RPD Officer Kevin Wehbring ("Officer Wehbring") filed a felony complaint against Murphy charging him with Grand Larceny in the Third Degree. Murphy was arrested on November 14, 2007, at which time the RCSD suspended Murphy with pay.

On the day of his arrest, Principal Kantor had observed Murphy leaving a black computer case in a break-room used by teachers. A laptop computer in a black case was retrieved by a school janitor from the break-room, and images of pornographic and/or lewd nature were found on the hard drive.

Following presentment of the larceny case to a Monroe County grand jury, Murphy was prosecuted on a charge of Petit Larceny by way of a prosecutor's information dated April 29, 2008. Following Murphy's motion to inspect the grand jury minutes and dismiss the charge, Rochester City Court Judge Melchor Castro found probable cause to believe that Murphy committed the offense of Petit Larceny. On March 10, 2009, Judge Castro acquitted Murphy, after a bench trial, of Petit Larceny, the sole charge in the indictment.

On March 23, 2009, six charges were instituted by the RCSD against Murphy pursuant to New York Education Law ("N.Y.E.L.") § 3020-a seeking to terminate his employment for reasons related to the alleged theft of the robotics parts and equipment, as well as for use of an RCSD-owned computer to store pornographic images and videos. Charge Six, premised on the theft of the robotics parts and equipment, was dismissed by Hearing Officer Patrick Westerkamp, Esq. ("the Hearing Officer") in July 2012. In November 2012, the RCSD withdrew Charge Three, which alleged that Murphy downloaded pornography on a district-owned computer during school hours. Following eighteen days of testimony, including testimony from two forensic computer experts, the Hearing Officer denied the four charges that remained pending, which all involved the discovery of pornographic files on an RCSD-issued laptop computer. In particular, the Hearing Officer found that the "record [did] not reveal with a reasonable degree of certainty which laptop was:

originally issued to Donald Murphy; carried to the Break Room on November 14th; retrieved by Tony Yaniro on November 15th; found by David Clark on November 16th; and/or later impounded by Administrator Martzloff." Decision, Order & Award, p. 24, Plaintiff's Exhibit ("Pl's Ex.") K [#37-4]. The Hearing Officer found that the RCSD "did not prove by a preponderance of the evidence" that Murphy "downloaded, possessed, or viewed files containing obscene, pornographic, or nude images, and/or videos on District computer equipment." Id., p. 27. Accordingly, all charges were denied. Id.

The Hearing Officer declined to return Murphy to active duty at the time, citing a "high level" of "animosity" between Murphy and the RCSD due to internal conflicts during 2006 and 2007. Id. at 27. The Hearing Officer noted that the instant litigation, which Plaintiff commenced during the § 3020-a proceeding, "will most likely exacerbate existing, mutual bad feelings." Id. at 28. Accordingly, the Hearing Officer found it "prudent to wait until the lawsuit has ended, by settlement or verdict, before reinstating [Murphy] to the class room." Id. Accordingly, as of January 7, 2013, the Hearing Officer directed that Murphy be placed on interim leave, with his compensation computed at eighty percent of the daily rate he would have received if actively reporting for duty. Id.

## B. Procedural History of the Instant Litigation

Plaintiff commenced this action by a complaint [#1][1] filed on February 12, 2009. He filed an amended complaint [#2] on June 8, 2009, asserting nine causes of action: malicious prosecution, abuse of process, false arrest, negligent supervision, intentional infliction of emotional distress, "due process", libel, slander, and "[42 U.S.C.] § 1983 Civil Rights". A stipulation of dismissal [#35] was entered on June 13, 2013, terminating the following defendants: former principal Eldridge Moore, III; Student Needel; Chief Human Resources Officer of the RCSD Joanne Giuffrida ("CHRO Giuffrida"); Sentry Jackson; and "other known or unknown Members of the City of Rochester School District and the Rochester Police Department".

The RCSD Defendants filed a motion for summary judgment dismissing the amended complaint. Plaintiff filed his opposition papers [#37], and the RCSD Defendants filed their reply [#40].

## III. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure ("F.R.C.P.") provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[1]

Numerals in brackets refer to the numbered docket entries in this case in the Western District of New York's Case Management/Electronic Case Files ("CM/ECF") system.

matter of law." "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the [non-moving] party.'" <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 212 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). On a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in that party's favor. <u>Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 226 (2d Cir. 2008).

Once the moving party satisfies its burden of showing that no genuine issue of material fact exists, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), the non-moving party must "set out specific facts showing a genuine issue for trial." F<small>ED</small>. R. C<small>IV</small>. P. 56(e); <u>see</u> <u>also Anderson</u>, 477 U.S. at 250. "The moving party is 'entitled to a judgment as a matter of law' [when] the [non-moving] party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." <u>Celotex Corp.</u>, 477 U.S. at 323.

In order to defeat a motion for summary judgment, the non-moving party cannot rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

_Corp._, 475 U.S. 574, 586 (1986). "[T]he mere existence of _some_ alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." _Anderson_, 477 U.S. at 247–48 (emphasis in original).

## IV. Timeliness

The RCSD Defendants argue that the Plaintiff's third cause of action (false arrest), seventh cause of action (defamation by libel), and eighth cause of action (defamation by slander) are barred by the one-year statute of limitations set forth in New York Civil Practice Law and Rules ("C.P.L.R.") § 215(c) for intentional torts. Plaintiff responds that the claims are not time-barred because the applicable statute of limitations is found in New York General Municipal Law ("G.M.L.") § 50-i(1)(c) not C.P.L.R. § 215(c). _See_, _e.g._, _Carlson v. Geneva City Sch. Dist._, 679 F. Supp.2d 355, 370 (W.D.N.Y. 2010).

G.M.L. § 50-i(1) deals with the presentation of tort claims and commencement of tort actions against municipalities, fire districts, and school districts. N.Y. GEN. MUN. L. § 50-i(1). The statute specifically provides that any action for "personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such [entity]" "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based[,]" subject to a wrongful death exception inapplicable here. _Id._, § 50-i(1)(c).

The RCSD Defendants do not meaningfully distinguish the cases cited by Plaintiff. Indeed, the cases cited by them do not appear to deal with G.M.L. § 50-i(1)(c). For instance, Guerrier v. Quillian, No. 10 Civ. 9453(CM), 2011 WL 4916295 (S.D.N.Y. Oct. 14, 2011), is not a suit against a municipality or school district. Moreover, the New York state courts have held, as a matter of state law, that "the General Municipal Law [§ 50—i] prevails over the general statute of limitation [C.P.L.R. § 215], in respect to the limitation upon commencement of actions in tort against a public corporation." Sorge v. City of N.Y., 56 Misc.2d 414, 421 (N.Y. Sup. Ct. 1968) (noting that "[o]rdinarily, the General Municipal Law reduces the statutory period for institution of suit" but "[i]n this instance, the limitation is extended"). Accordingly, the Court concludes that the third, seventh, and eighth causes of action are not time-barred. The RCSD Defendants' motion to dismiss them on that basis is denied with prejudice.

## V.    Discussion of the Summary Judgment Motion

### A.    First Cause of Action (Malicious Prosecution)

Plaintiff alleges that the City, the RCSD, and Officer Wehbring "with actual" malice prosecuted him on criminal charges. See Am. Compl., ¶¶ 58-62. "The elements of a malicious prosecution claim under New York law are '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that

-8-

the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" Rohman v. New York City Transit Auth., 215 F.3d 208 (2d Cir. 2000) (quoting Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999) (further citations omitted)).

To state a cause of action for malicious prosecution under 42 U.S.C. § 1983, Plaintiff must assert an additional element: a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. Id. (citation omitted). Although Plaintiff has not specifically addressed the required elements of a § 1983 action for malicious prosecution, the Court finds that the fifth element may be inferred from the undisputed facts, insofar as Plaintiff was required to attend court appearances. See Murphy v. Lynn, 118 F.3d 938, 945-46 (2d Cir. 1997) (restrictions on out-of-state travel for an arraigned defendant and his required appearances in court amount to seizures for Fourth Amendment purposes).

The Court first addresses the probable cause element, as it is dispositive of the malicious prosecution claim against all of the defendants.

## 1. Plaintiff's Indictment by the Grand Jury Created the Presumption of Probable Cause

Probable cause is a complete defense to a malicious prosecution claim. Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985). The validity of an

arrest does not depend upon an ultimate finding of guilt or innocence, see Pierson v. Ray, 386 U.S. 547, 555 (1967) (citations omitted), and thus the fact of Plaintiff's subsequent acquittal does not defeat a finding that probable cause once existed for his arrest. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

In the present case, Plaintiff was arrested on a charge of third degree grand larceny but indicted on a charge of petit larceny. Thus, the probable cause finding made by the grand jury was with regard to a lesser offense than that which formed the basis for Plaintiff's arrest. As the RCSD Defendants concede, a finding of probable cause on a lesser charge does not automatically serve as a defense to a malicious prosecution claim on the greater charge. The Court thus turns to the issue of whether, in this case, the grand jury's indictment of Murphy on petit larceny is sufficient to create the presumption of probable cause to arrest on the charge of third degree grand larceny.

The Second Circuit understandably has expressed concern that the government could add unsupported, more serious charges to legitimate minor charges if probable cause for a lesser charge necessarily precluded malicious prosecution claims based on the

higher charges. <u>See</u> <u>Janetka v. Dabe</u>, 892 F.2d 187, 190 (2d Cir. 1989). However, there is no reason to believe from the facts alleged here that this is a case where the Court "must be concerned that prosecutors set about 'securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones.'" <u>Fernandez v. City of N.Y.</u>, No. 02 Civ.8195 JGK, 2003 WL 21756140, at *6 (S.D.N.Y. July 29, 2003) (quoting <u>DiBlasio v. City of New York</u>, 102 F.3d 654, 658 (2d Cir. 1996); citing <u>Bowles v. State of New York</u>, 37 F. Supp.2d 608, 612 n. 3 (S.D.N.Y. 1999)). In other words, this is not a case where concerns about the "piling on" of criminal charges arise.

As a general matter, where a criminal prosecution has resulted in acquittal on some, but not all charges, the court must determine whether the charges are "sufficiently distinct to allow a malicious prosecution claim to proceed on the charge for which there was an acquittal." <u>Janetka</u>, 892 F.2d at 190. Here, it cannot be said that the two charges are sufficiently distinct, for the gravamen of the charges on which Plaintiff was arrested and indicted is the same: grand larceny is a stealing of property of a specified value, whereas petit larceny is any stealing of property, regardless of the property's value. <u>Compare</u> N.Y. PENAL LAW § 155.25 ("A person is guilty of petit larceny when he steals property.) <u>with</u> N.Y. PENAL LAW

§ 155.35(1) ("A person is guilty of grand larceny in the third degree when he or she steals property and . . . the value of the property exceeds three thousand dollars. . . ."). Third degree grand larceny and petit larceny share the common element of theft, and there is no aggravating element to third degree grand larceny, such as a taking from a person. Thus, under the particular circumstances of this case, the Court can conclude that as a matter of a law, the probable cause finding by the grand jury on the petit larceny charge is sufficient to serve as probable cause for the grand larceny charge for which Plaintiff was arrested.

### 2. Plaintiff Has Failed to Rebut the Presumption of Probable Cause.

The presumption of probable cause created by a grand jury indictment "'may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'" Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004) (quoting Colon, 60 N.Y.2d at 82–83). "Thus, in order for a plaintiff to succeed in a malicious prosecution claim after having been indicted, 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Id. (quotation omitted).

Plaintiff contends that the RCSD Defendants "did not make a full and complete statement of facts" to the RPD officers; "misrepresented or falsified evidence" to the RPD officers; or "kept back information or facts" from the RPD officers "which might have affected the result". Plaintiff's Memorandum of Law ("Pl's Mem.") at 8 [#37]. Plaintiff has identified eight items of information that he claims were withheld by the RCSD Defendants from the RPD. See Affidavit of Donald Murphy ("Murphy Aff."), ¶ 32(a)-(h) [#37-2]. The RCSD Defendants argue that Plaintiff has not shown that any material facts were held back from the police.

The Second Circuit's decision in Rothstein v. Carriere, 373 F.3d 275, is dispositive of Murphy's argument on this point. In Rothstein, the plaintiff argued that the fact that a grand jury had returned an indictment against him was irrelevant because his claims against the defendant were not premised on the defendant's grand jury testimony (whatever it may have been), but instead were based on what the defendant told law enforcement officials during their investigation into the plaintiff's activities. Id. at 283. The Second Circuit disagreed, noting that the plaintiff's "cause of action [was] for malicious *prosecution*, not for maliciously making false statements to law enforcement authorities." Id. (emphasis in original). The Second Circuit explained that the grand jury's indictment of the plaintiff presumptively established probable cause to initiate criminal prosecution against him. Id. The

plaintiff therefore "was required to rebut that presumption by proving fraud, perjury, suppression of evidence or other misconduct *in the grand jury*." Id. (emphasis supplied). In Rothstein, the plaintiff failed to attempt to make that showing, which "requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'" Rothstein, 373 F.2d at 284 (quoting Colon, 60 N.Y.2d at 82). The sole basis for Rothstein's attempted rebuttal was that Carriere testified in the grand jury, and therefore the indictment must have been procured by perjury. The Second Circuit rejected that argument as "rank speculation", noting that the content of Carriere's grand jury testimony was unknown, as was the content of the rest of the government's presentation. Id.

As in Rothstein, Plaintiff here has not attempted to show that there were any irregularities in the grand jury proceeding. Plaintiff has not even mentioned the grand jury proceedings or addressed the contents of the District Attorney's presentation in support of the larceny charge. Nor has he asserted that any of the RCSD Defendants testified falsely before the grand jury or withheld evidence from that body. By failing to show what occurred in the grand jury, Plaintiff cannot establish misconduct so as to warrant overcoming the presumption of regularity accorded to that entity's functioning. As noted above, a grand jury directed the filing of a

prosecutor's information on the petit larceny charge. "The fact that the grand jury directed the filing of a prosecutor's information establishes a prima facie case of probable cause . . . ." <u>Schero v. Merrola</u>, 74 Civ. 1361, 1974 WL 904, at *2 (S.D.N.Y. July 2, 1974) (citing <u>Eberhardt v. Consolidated Edison Co. of N.Y.</u>, 151 N.Y.S.2d 823, 824 (1st Dept. 1956), <u>aff'd</u>, 3 N.Y.2d 968 (1957)). This unrebutted probable cause finding is a complete defense to Murphy's claims of malicious prosecution under 42 U.S.C. § 1983 as well as New York state law. Accordingly, the First Cause of Action is dismissed in its entirety.

**B.    Second Cause of Action: Abuse of Process**

Murphy alleges that the RCSD "initiated the . . . disciplinary proceedings [pursuant to N.Y.E.L. § 3020-a] moved by a purpose to do harm, without economic, social excuse or justification." Am. Compl., ¶ 65. According to Murphy, the RCSD "is using the disciplinary process in a perverted manner and in hopes to gain a collateral advantage against" him in the present lawsuit. <u>Id.</u>, ¶ 66.

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994) (citing

<u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 116 (1984); other citation omitted)). The malicious *abuse* of criminal process may give rise to a Section 1983 claim, separate and apart from that which constitutes a claim of malicious prosecution (malicious *use* of process). <u>Id.</u> at 79-80.

However, "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." <u>Savino v. City of New York</u>, 331 F.3d 63, 77 (2d Cir. 2003) (quoting <u>Curiano</u>, 63 N.Y.2d at 117; citing <u>Hauser v. Bartow</u>, 273 N.Y.2d 370, 374 (1937)). "There must be an abuse of process which has as its direct object an effect outside the intended scope of operation of the process employed." <u>Jones v. Maples/Trump</u>, No. 98 CIV. 7132(SHS), 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002) (comparing cases). Thus, "without an allegation that the process has been improperly perverted 'after' its issuance, a claim of abuse of process must be dismissed, even though the defendant acted maliciously in initiating the process." <u>Id.</u> (citing <u>Curiano</u>, 63 N.Y.2d at 117).

Fairly read, Murphy's amended complaint alleges only that the RCSD acted vengefully or maliciously in bringing the charges. Murphy attempts to shoehorn his pleadings into a cause of action for abuse of process by stating that the RCSD was seeking to terminate his employment "at any cost, which is outside the legitimate ends of the [N.Y.E.L. § 3020-a] process." Am. Compl., ¶ 66. Although Murphy believes that his termination would have been

unjustified, he cannot cite any authority for the proposition that termination of a tenured teacher's employment is not a potential "legitimate" conclusion following the issuance of disciplinary charges pursuant to N.Y.E.L. § 3020-a. Here, he ultimately was not terminated, but if the Hearing Officer had found the charges to be supported by a preponderance of the evidence, Murphy's employment legitimately could have been ended. His allegation that the RCSD "hoped" to gain a collateral advantage in this litigation is wholly speculative. Because Murphy does not plausibly allege that the disciplinary charges were improperly used "after" they were brought, his state law and Section 1983 claims for abuse of process must be dismissed. Jones, 2002 WL 287752, at *7 (citing Curiano, 63 N.Y.2d at 117; other citation omitted). Accordingly, Plaintiff's Second Cause of Action is dismissed in its entirety.

## C.    Third Cause of Action: False Arrest

Murphy's state law and § 1983 claims for false arrest derive from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest without probable cause. Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). In analyzing claims for unconstitutional false arrest, the court looks to the law of the state in which the arrest occurred. Davis v. Rodriquez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, probable cause constitutes an absolute defense to a claim of false

arrest. <u>Jaegly</u>, 439 F.3d at 152 (citing <u>Weyant</u>, 101 F.3d at 852). As discussed above, the grand jury's indictment gave rise to the presumption of probable cause to arrest, and Murphy has not rebutted that presumption. Accordingly, Murphy's constitutional claim that he was falsely arrested cannot proceed. The Third Cause of Action accordingly is dismissed in its entirety as to all defendants.

### D.  Fourth Cause of Action: Negligent, Hiring, Training and Supervision

#### 1.  The RCSD

With regard to the RCSD, Plaintiff asserts that it knowingly employed "administrators, teachers and staff with known illegal and fraudulent propensities in positions that presented a readily foreseeable risk of harm to [him]." Am. Compl., ¶ 86. He also asserts that the RCSD failed to properly supervise Principal Kantor, Ass't Principal Martzloff, and Interim Superintendent William Cala ("Sup't Cala"). <u>Id.</u>, ¶ 87. As Defendants point out, Plaintiff has pled this claim against the RCSD as a simple state-law negligence claim; he has not alleged an unconstitutional policy or custom as he has done against the City and the RPD.

"It is well settled that 'defendants cannot be held liable for their alleged negligent hiring, training, supervision, or retention of [an employee accused of wrongful conduct] unless they had 'notice [of the employee's] propensity for the type of behavior causing plaintiff's harm.'" <u>Knicrumah v. Albany County School</u>

Dist., 241 F. Supp.2d 199, 211 (N.D.N.Y. 2003) (quoting Paul J.H. v. Lum, 736 N.Y.S.2d 561, 562 (4th Dep't 2002); other citations omitted). There is nothing in the record before the Court to suggest that any prior disciplinary action had been taken against any of the RCSD Defendants. Likewise, there is nothing to suggest that any of the RCSD Defendants had a propensity to commit the allegedly "illegal" or "fraudulent" conduct Plaintiff claims they committed. Thus, to the extent Plaintiff's fourth cause of action is based on a theory of negligent hiring, retention, supervision, or training of the RCSD defendants, it must be dismissed. E.g., Knicrumah, 241 F. Supp.2d at 211. Even if the RCSD were aware of some propensity of the individual RCSD Defendants to engage in the alleged conduct, proximate causation cannot be proven because Murphy has presented no evidence linking the decisions to hire and retain the RCSD Defendants, and the alleged failure to train, supervise, or discipline the RCSD Defendants, with the alleged injuries he suffered. Id. n.5.

Plaintiff's claim suffers from a further deficiency insofar as Plaintiff does not allege, nor can he do so on this record, that any of the RCSD Defendants acted outside the scope of their employment. "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring,

retention, supervision or training[.]" <u>Talavera v. Arbit</u>, 18 A.D.3d 738, 738-39 (2d Dep't 2005) (citations omitted).

### 2. The RPD

Murphy alleges that not only the individual police officers, but also their employer, the RPD; and the City, of which the RPD is a part, violated his constitutional rights. Title 42 U.S.C., Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 692 (1978) (quoting 42 U.S.C. § 1983). "<u>Monell</u> does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).

Murphy has adduced no evidence in support of his claim that the RPD or the City had, at any time relevant to this action, a policy pursuant to which police officers were permitted to conduct larceny investigations in a reckless manner. <u>See</u> <u>Ramos v. City of N.Y.</u>, 285 A.D.2d 284, 300-01 (2d Dep't 2001) ("There is no plausible indication that the defendant deviated from customary practices governing the investigation of criminal cases [.]") (citation omitted). Morever, as discussed above, the Court has not

found that any underlying constitutional violations were committed by the individual police officers. In addition, it has found that the grand jury's indictment created a presumption of probable cause which has not been rebutted. Consequently, the City cannot be found liable under <u>Monell</u>. <u>See</u> <u>Doe v. Smith</u>, 704 F. Supp. 1177, 1188 (S.D.N.Y. 1988) ("Because the court found no violation by defendant detective Smith, there are no grounds for establishing liability against the Town of Poughkeepsie . . . .").

In sum, the Fourth Cause of Action is dismissed in its entirety as to all defendants.

**E.  Fifth Cause of Action: Intentional Infliction of Emotional Distress**

Murphy's fifth cause of action for intentional infliction of emotional distress ("IIED") under New York state law is asserted against unspecified defendants. Based on this Court's reading of the amended complaint, all of the wrongs alleged in the other causes of action are subsumed in the fifth cause of action. In other words, Plaintiff's claim of IIED is merely a rehashing of the remainder of the amended complaint.

The tort of IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howard v. New York Post Co.</u>, 81 N.Y.2d 115, 121 (1993). Unlike other intentional torts, IIED "does not

proscribe specific conduct" but rather "imposes liability based on after-the-fact judgments about the actor's behavior[.]" Id. at 122 (citations omitted).

Every single IIED claim that the New York Court of Appeals has considered has failed because the alleged conduct was "not sufficiently outrageous[.]" Id. (citations omitted). As the RCSD Defendants argue, the allegedly outrageous conduct complained of by Murphy falls within the scope of the other traditional torts he has pleaded (i.e., false arrest; malicious prosecution; abuse of process; negligent hiring, supervision and training; and defamation by libel and slander). After reviewing the relevant decisions, the Court finds, as a matter of law, that the challenged conduct does not come close to the level that would be required to sustain an IIED claim. See Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983) ("Liability has been found only where the conduct has been so outrageous in character . . . as to . . . be regarded as atrocious, and utterly intolerable in a civilized community[.]") (quotation omitted). The Fifth Cause of Action is dismissed in its entirety as to all defendants.

**F.    Sixth Cause of Action: Denial of Due Process**

For his sixth cause of action, Plaintiff alleges that his suspension at 80 percent of his regular salary violated his rights under the due process clause. He does not specify whether he is claiming a violation of procedural due process, substantive due

process, or both. However, since Murphy complains about the outcome of the § 3020-a hearing, the Court interprets his amended complaint as also attempting to raise a substantive due process argument.

### 1. Procedural Due Process

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, "no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard." Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007). N.Y.E.L. § 3020 recognizes that a tenured teacher has a constitutionally protected property interest in his right to continued employment, which cannot be deprived without due process. See, e.g., Holt v. Board of Ed. of Webutuck Cent. Sch. Dist., 52 N.Y.2d 625, 628 (1981). The procedures set forth in § 3020-a provide the process due to Murphy, as a tenured teacher, under the federal constitution. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (citations omitted). Murphy received written notice of the charges, and he elected to have a hearing, which spanned eighteen days of testimony. Following the hearing, he received an exhaustive written decision from the Hearing Officer, who denied all of the disciplinary charges against Murphy. Clearly, Murphy received all the process due to him under the Constitution.

### 2. Substantive Due Process

To prevail on his substantive due process claim, Murphy must (1) establish the existence of some constitutionally-protected

interest, O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005); and (2) demonstrate that "the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" Benzman v. Whitman, 523 F.3d 119, 126 (2d Cir. 2008) (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)). The Fourteenth Amendment is not a "font of tort law[,]" County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998), and it "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." Pena, 432 F.3d at 112. It is exceedingly difficult for litigants to demonstrate the arbitrary conduct necessary to establish a substantive due process violation: In order to shock the conscience, official conduct must be "'brutal' and 'offensive to human dignity'. . . ." Johnson v. Glick, 481 F.2d 1028, 1033 & n. 6 (2d Cir. 1973) (quotation omitted).

None of what can be reasonably inferred from the allegations in the amended complaint is egregious, outrageous, brutally offensive to human dignity, or conscience-shocking so as to be actionable as a violation of substantive due process. The Court wishes to point out that all of the disciplinary charges against Murphy were dismissed, and he has *retained* his position as a tenured teacher with the RCSD.

In sum, Plaintiff does not have a viable claim for the denial of procedural or substantive due process. The Sixth Cause of Action is dismissed in its entirety.

**G.    Seventh Cause of Action: Defamation by Libel**

Plaintiff asserts in his amended complaint that he was defamed by libelous statements in (1) a letter from Sup't Cala dated December 7, 2007; (2) the supporting deposition given by Principal Kantor to the police; and (3) the supporting deposition given by Ass't Principal Martzloff to the police.[2] However, in his opposition to Defendants' motion for summary judgment, Plaintiff only addresses the letter by Sup't Cala. This failure to acknowledge the statements by Ass't Principal Martzloff and Principal Kantor signals the abandonment of his libel claims based on those statements. See, e.g., Taylor v. City of N.Y., 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

Turning to the letter from Sup't Cala, the objectionable phrasing reads as follows: "[T]he police seized a District computer used by Mr. Murphy, because of images of a sexual or pornographic nature found on that equipment." Pl's Ex. H, p. 2 [#37-4].

_____

[2]

Plaintiff also alleges libel against Student Needel and Sentry Jackson, but these individuals have been terminated as parties.

Defendants argue that the statement is absolutely privileged and therefore cannot form the basis of a libel action. See Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 208 (1983) ("A privileged communication is one which, but for the occasion on which it is uttered, would be defamatory and actionable[.]") (citations omitted).

Here, Sup't Cala was acting in his official capacity as Interim Superintendent when he made the statement. See id. ("Absolute privilege is based upon the personal position or status of the speaker and is limited to the speaker's official participation in the processes of government.") (citations omitted). In making the statement, he was officially participating in the process used by New York State Education Department to review teachers' certifications. See id. The Court agrees with the RCSD Defendants that an absolute privilege applies to Sup't Cala's statement, making it non-actionable. See Julien J. Studley, Inc. v. Lefrak, 50 A.D.2d 162, 164 (2d Dep't 1975) ("[A] communication, made to a licensing agency in connection with a license revocation proceeding in which the agency holds a hearing in order to properly perform its function, is entitled to an absolute privilege, such as that accorded judicial proceedings, thereby rendering the question of malice immaterial[.]") (citations omitted). The Seventh Cause of Action therefore is dismissed in its entirety.

**H.  Eighth Cause of Action: Defamation by Slander**

Plaintiff alleges Principal Kantor made slanderous statements against him when she announced at a November 14, 2007 meeting that he had been arrested. He also asserts that she made false statements to the effect that he had been caught on surveillance videotape carrying the missing robot and placing it in his car, and that the robot had been recovered after the police executed a search warrant. Plaintiff also alleges slander against CHRO Giuffrida.

In his opposition to Defendants' motion for summary judgment, Plaintiff only addressed the alleged defamatory statements made by CHRO Giuffrida, who since has been terminated as a party to this action. Plaintiff's failure to acknowledge Principal Kantor's statements indicates that he has abandoned his slander claims based upon them. See Ostroski v. Town of Southold, 443 F. Supp.2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone."). Plaintiff's Eighth Cause of Action accordingly is dismissed in its entirety.

**I.  Ninth Cause of Action: Civil Rights Violations Under 42 U.S.C. § 1983**

Murphy's ninth cause of action, see Am. Compl., ¶¶ 111-16, is asserted against unspecified defendants and essentially is a "catch-all" claim. For instance, Murphy states that unspecified

defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments "by participating in the foregoing conduct, including the malicious prosecution, abuse of process, unlawful arrest, false imprisonment, intentional infliction of emotional distress, defamation and improper suspension of [his] employment." Am. Compl., ¶ 112. The Court has already determined that the underlying claims set forth in Paragraph 112 fail as a matter of law, as discussed further above in this Decision and Order. Therefore, Plaintiff's § 1983 claims premised on malicious prosecution, abuse of process, unlawful arrest, false imprisonment, IIED, defamation and improper suspension of his employment likewise must fail.

The only other discrete allegation under the ninth cause of action is that unspecified defendants brought "false and inflammatory disciplinary charges against Mr. Murphy in retaliation against him and by using the disciplinary process and the Education Law in a perverted manner in an attempt to wrongfully effectuate Mr. Murphy's termination and to gain collateral advantage against him in other pending legal actions." Am. Compl., ¶ 113. Plaintiff, however, has failed to cite the First Amendment or indicate specifically why the unspecified defendants (presumably, the RCSD Defendants) retaliated against him. Because Plaintiff here is represented by counsel, his pleadings are not entitled to the special solicitude afforded to pro se litigants. Nevertheless, in

the interest of completeness, the Court has construed Plaintiff's amended complaint as attempting to state a claim under the First Amendment for retaliation.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings a retaliation claim based on the First Amendment, he must put forth evidence that demonstrates the following in order to establish a prima facie case: (1) he engaged in constitutionally protected speech because he spoke as a "[private] citizen[ ] on a matter of public concern"; (2) he suffered an adverse employment action; and (3) the speech was a "motivating factor" in the adverse employment decision. Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008). However, defendants may still "escape liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." Id. (citing Cobb v. Pozzi, 352 F.3d 79, 91 (2d Cir. 2003)).

### 1.    Speech as a Private Citizen

Regardless of the factual context, a plaintiff alleging retaliation must establish speech protected by the First Amendment. Sousa v. Roque, 578 F.3d 164, 169-70 (2d Cir. 2009) (citation omitted). "To determine whether or not a plaintiff's speech is protected, a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" Id. at 170 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). Even if a public employee is speaking on a matter of public concern, his speech is not protected if he is not speaking as a private citizen. Garcetti, 547 U.S. at 421.

Murphy does not specifically allege that he engaged in protected conduct by speaking as a private citizen on a matter of public concern, but he does assert that "[t]hroughout his . . . career", he has "elicited the scorn of his peers and his supervisors by uncovering and exposing illegal teaching, hiring, and accrediting practices within the District." Am. Compl., ¶ 18. He then proceeds to detail some of his whistleblowing activities. Id., ¶¶ 19-21. In particular, Murphy alleges that he (1) wrote to various state agencies to inform them of the RCSD's failure to meet accreditation requirements set by those groups; (2) "revealed" that while the RCSD was "'offering' Project Lead the Way programs, it was not providing for the services and following up in the manner it was supposed to"; (3) was "responsible for bringing to light

that a[n] RCSD principal at Benjamin Franklin High School. . . .
lacked proper credentials", i.e., a master's degree or doctorate
degree; and (4) was "instrumental in revealing to NYS [sic]" that
the RCSD "had surreptitiously gained certification for Edison Tech,
despite the fact that unlicensed teachers . . . were being used to
teach courses within the school." Am. Compl., ¶¶ 18-21.

However, Murphy's allegations are unacceptably vague inasmuch
as they provide scant detail as to the content of the speech and do
not indicate to whom the speech was directed, the nature of the
forum in which the speech was made, or when the instances of
protected speech occurred. Allowing Murphy to attempt to replead
would be futile, since the retaliation claim fails as a matter of
law for other reasons, as discussed below.

### 2. Adverse Employment Action

Although Plaintiff failed to specifically address this
element, the Court finds that the institution of the Section 3020-a
proceeding counts as an adverse employment action. See Kelly v.
Huntington Union Free Sch. Dist., No. 09-CV-2101, 2012 WL 1077677,
at *16 n. 21 (E.D.N.Y. Mar. 30, 2012) ("[T]he 3020-a charges are
clearly an adverse employment action because 'the institution of
disciplinary proceedings is sufficient in this circuit to
constitute an adverse employment decision.'") (quoting Skehan, 465
F.3d at 106).

### 3.    Causal Connection

The Second Circuit has explained that the "causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (citations omitted). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Id. at 110. However, a plaintiff may not rely on "conclusory assertions" to show the requisite causal link. Id. at 111.

Although the Hearing Officer noted that there were "mutual, bad feelings" between the parties, personal animosity is not tantamount to retaliatory animus. See Neratko v. Frank, 31 F. Supp.2d 270, 285 (W.D.N.Y. 1998) ("[A]n employer's decision to deny an employment benefit to an employee does not violate Title VII when that decision is motivated by personal animosity.") (citing McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986)). Apart from Murphy's self-serving and conclusory allegations, Murphy has adduced no direct evidence of retaliatory animus. Contrast with Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003) (finding that plaintiff came forward with sufficient direct proof

of retaliatory animus, such as the letter expelling him which "expressly stated that he was being removed for having 'branded the entire department as racist and anti-semites'"; the expulsion showed that, at least during the months following the protected speech, "a substantial number of police officers viewed the testimony as a betrayal of the department") (quotation to record omitted).

Murphy also cannot show circumstantial evidence of retaliatory animus. Notably, he has not specified the dates on which the alleged instances of protected speech occurred, and thus he cannot rely on the proximity between the speech and the adverse employment action to show causation indirectly.

### 4. The RCSD Defendants Would Have Taken the Same Actions Regardless of Any Protected Speech.

The Second Circuit has explained that "even if there is evidence that the adverse employment action was motivated in part by protected speech, the [defendant] can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998) (citing, inter alia, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Given the present record, there is no question that the RCSD Defendants would have pursued disciplinary charges via the § 3020-a process against Murphy. As noted above, five of the charges concerned the alleged downloading of pornography on a school-issued

computer, and one concerned the alleged theft of the robotics equipment. At the time the RCSD instituted the § 3020-a proceeding, Murphy had been acquitted of petit larceny with regard to the robotics equipment. Although the RCSD's chances of success in the § 3020-a proceeding on this charge were slim, Plaintiff has presented no evidence to suggest that the RCSD "would not ordinarily have disciplined[,]" Heil, 147 F.3d at 110, a teacher for stealing school-owned property.

With regard to the § 3020-a charges related to the possession of pornography, the RCSD's preliminary investigation indicated that Murphy's computer user account contained a folder with pornographic and erotic images. During the § 3020-a proceeding, the Hearing Officer heard extensive testimony from two forensic computer experts who both "identified website, and pornographic photos that were linked to [Murphy]" although "[d]irect evidence [did] not prove that Donald Murphy downloaded, possessed, or viewed pornographic images on a RCSD issued computer." As with the theft charge, there is nothing to suggest that the RCSD "would not ordinarily have disciplined[,]" id., a teacher for downloading or viewing pornographic materials on a school-issued computer. The only reasonable conclusion on this record is that, even in the absence of any protected speech by Plaintiff, the challenged adverse action would have occurred. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

**V.    Conclusion**

For the foregoing reasons, the RCSD Defendants' motion for summary judgment [#31] is granted, and the amended complaint [#2] is dismissed in its entirety as to all named defendants. The Clerk of the Court is request to close this case.

**SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     December 5, 2013
           Rochester, New York